**AUTO BODY ASSOCIATION OF RHODE ISLAND**

v.

**STATE of Rhode Island DEPARTMENT OF BUSINESS REGULATION et al.**

Nos. 2008–224–M.P., 2008–225–M.P.

Supreme Court of Rhode Island.

June 4, 2010.

Jina Petrarca–Karampetsos, Esq., for Auto Body Association of Rhode Island.

Elizabeth Kelleher Dwyer, Esq., for State of Rhode Island Department of Business Regulation.

Linn F. Freedman, Esq., Providence, for Property and Casualty Insurers' Association of America.

Present: SUTTELL, C.J., FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

This case arose out of a dispute concerning the determination of the prevailing labor rate according to which property and casualty insurers must pay auto body shops for work performed on vehicles covered by such insurers. The petitioners, the Rhode Island Department of Business Regulation (DBR) and the Property and Casualty Insurers Association of America (PCI), filed separate petitions for the issuance of writs of certiorari, seeking review of a Superior Court order which reversed DBR's interpretation of G.L.1956 § 27–29–4.4. For the reasons set forth in this opinion, we grant the petitions for certiorari and quash the judgment of the Superior Court.[1]

I

### Facts and Travel

The underlying facts that are implicated by this case are largely undisputed. The Auto Body Association of Rhode Island (Auto Body) is an organization with a membership of approximately one hundred independent auto body shops located throughout Rhode Island. Auto Body asserts that, for many years, the prevailing labor rate according to which insurers made payments to auto body shops for work performed on vehicles covered by those insurers was "woefully inadequate." In 2006, the General Assembly enacted § 27–29–4.4; that statute, in pertinent part, provides that "[e]ach insurer must conduct an auto body labor rate survey, in writing, annually to determine a prevailing auto body labor rate for fully licensed auto body repair facilities." Section 27–29–4.4(a)(2).

In order to implement the provisions of § 27–29–4.4, in October of 2006, DBR promulgated Insurance Regulation 108. (02–030–108 R.I.Code R. § 2.) Insurance Reg-

---

1. We wish to thank the *amici curiae* for the helpful briefs which they submitted to this Court in connection with the significant issues implicated by this case.

ulation 108, § 3 provides, in pertinent part, as follows:

"Each insurer that writes more than one percent (1%) of the total premium volume of Motor Vehicle Liability Insurance during the immediately preceding calendar year shall conduct an auto body labor rate survey in accordance with R.I.G.L. §§ 27–29–4.4 and this Regulation."

In addition, Insurance Regulation 108, § 7(2) requires insurers to file with DBR an annual report regarding the just-referenced labor rate survey. Section 7(3) of Insurance Regulation 108 provides that "[t]he Report of Labor Rate Survey must include [*inter alia*] the following:

" * * *

"d. Results of the questionnaires considered by the insurer.

" * * *

"f. A description of the formula or manner in which the insurer has calculated or determined the prevailing labor rate which it pays to auto body repair facilities.

"g. The prevailing labor rate established by the insurer.

"h. If the calculation or formula indicated in subsection f above is not based on the results of the questionnaires identified in subsection d above, a complete explanation as to why it is not so based."

Pursuant to Insurance Regulation 108, § 7(1), insurers were required to file their first annual report with DBR by June 1, 2007. Auto Body contends that, upon reviewing those initial reports, it "learned that many insurers refused to set a prevailing labor rate, claiming that they 'negotiate' with each shop directly (while paying

all the same rate), or set a prevailing labor rate basing it upon information such as insurer historical data, subrogation rates, and rates paid in other states."

On July 23, 2007, acting pursuant to G.L.1956 § 42–35–8, Auto Body filed a petition for a declaratory ruling with DBR. In its petition, Auto Body sought a declaration "that the [labor rate] survey results be used to determine a prevailing labor rate as required by the statute [§ 27–29–4.4], which does not allow for any other mechanism to determine and set such rate." Auto Body's petition for a declaratory ruling also made reference to the responses of numerous insurers, which (according to Auto Body) stated that "they do not base their prevailing labor rate on the survey, that they do not set a rate and negotiate directly with each shop, or that they are awaiting ruling by the Department."

After having provided interested parties with notice and an opportunity to respond to Auto Body's petition for a declaratory ruling, DBR issued a written decision on November 21, 2007. In that decision, DBR stated that § 27–29–4.4 does not clearly require that insurers must set their labor rate *solely* on the basis of the labor rate survey.[2] It was further DBR's position that "the information received from the survey must be taken into consideration by the insurer *as one element* in its decision making process." (Emphasis added.)

In its decision, DBR stated that it had determined that the statute was ambiguous and that, therefore, it had conducted an analysis of the legislative intent behind the statute in order to determine its meaning. DBR stated that "the clear legislative

---

**2.** DBR also reiterated in its decision that, having utilized "the rules of statutory construction," it had determined (in promulgating Insurance Regulation 108) that G.L.1956 § 27–29–4.4 only applied to "insurers writing more than 1% of the Rhode Island market in private passenger automobile insurance lines."

intent" underlying § 27–29–4.4 was that insurers be required "to consider information submitted by auto body shops on labor rates and to provide public information on how the labor rates are set." In its decision, DBR indicated (1) that the statute merely sought "to provide additional transparency" with respect to the process of setting labor rates; and (2) that the labor rate survey was intended to be just one factor to be taken into account in the setting of labor rates. Accordingly, DBR denied Auto Body's request "that the Department find that * * * § 27–29–4.4 requires that the result of the labor rate survey be *the only mechanism* which an insurer can use to determine and set such labor rates for fully licensed auto body shops * * *." (Emphasis added.)

On December 5, 2007, Auto Body, relying upon the Administrative Procedures Act,[3] appealed DBR's decision to the Superior Court. Thereafter, PCI was permitted to intervene, and the legal issues were briefed by all parties. On August 13, 2008, a justice in the Providence County Superior Court issued a written decision, which reversed DBR's declaratory ruling. In her written decision, the hearing justice concluded that § 27–29–4.4 is not ambiguous. In so concluding, she held that "every insurer governed by § 27–29–4.4 must conduct a labor rate survey as provided in the statute and *use that survey as the sole determinant of the prevailing auto body labor rate.*" (Emphasis added.)

Although neither Auto Body nor DBR had raised the issue in the context of Auto Body's administrative appeal to the Superior Court, the hearing justice neverthe-

less chose to make a further ruling to the effect that " § 27–29–4.4 applies to *every* insurance carrier authorized to sell motor vehicle liability insurance in Rhode Island." (Emphasis added.) The latter ruling effectively overruled the provision within Insurance Regulation 108 whereby the requirements of § 27–29–4.4 are deemed to apply only to insurers writing more than one percent of private passenger automobile lines of insurance.

PCI filed a motion for clarification of the Superior Court's decision, and the hearing justice heard oral argument on that motion on August 28 and 29, 2008. The hearing justice denied the motion to clarify. DBR and PCI then filed separate motions to stay the effect of the hearing justice's decision. After a hearing was held on September 15, 2008 with respect to the motions to stay, the hearing justice denied PCI's motion to stay and partially granted DBR's motion.[4]

DBR and PCI each filed petitions for a writ of certiorari, pursuant to G.L.1956 § 42–35–16. On October 9, 2008, we entered an order issuing the writs, consolidating the proceedings, and staying the Superior Court decision pending our consideration of the issues.

## II

### Standard of Review

This Court has frequently stated that, when dealing with an administrative appeal, "the scope of our review, like that of the Superior Court, is an extension of the administrative process." *Rhode Island Public Telecommunications Authority v.*

---

3. General Laws 1956 § 42–35–15.

4. The hearing justice granted DBR's motion to stay her decision for a period of ninety days with regard to (1) "[t]hose insurers that are licensed to write motor vehicle liability insurance in Rhode Island but which have not written a motor vehicle liability insurance policy in Rhode Island in the last twenty-four (24) months" and (2) "[a]ll other insurers to which Insurance Regulation 108 is not applicable."

Rhode Island State Labor Relations Board, 650 A.2d 479, 484 (R.I.1994); see also Environmental Scientific Corp. v. Durfee, 621 A.2d 200, 208 (R.I.1993).

 The Superior Court's review of an administrative appeal is governed by the Rhode Island Administrative Procedures Act. That act provides, in pertinent part, as follows:

"The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

"(1) In violation of constitutional or statutory provisions;

"(2) In excess of the statutory authority of the agency;

"(3) Made upon unlawful procedure;

"(4) Affected by other error or law;

"(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

"(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Section 42–35–15(g).

In essence, if "competent evidence exists in the record, the Superior Court is required to uphold the agency's conclusions." Rhode Island Public Telecommunications Authority, 650 A.2d at 485; see also § 42–35–15.

 The act also guides this Court's review of the Superior Court's judgment in administrative proceedings. Section 42–35–16. In conducting our review, "we are restricted to questions of law, which we review de novo." Champlin's Realty Associates v. Tikoian, 989 A.2d 427, 437 (R.I. 2010); Rossi v. Employees' Retirement System, 895 A.2d 106, 110 (R.I.2006). Accordingly, we give deference to the factual findings of the administrative agency. Champlin's Realty Associates, 989 A.2d at 437; see also City of East Providence v. Public Utilities Commission, 566 A.2d 1305, 1307 (R.I.1989).

This Court has noted that, "[b]ecause we retain the power to review all questions of law, * * * this [C]ourt is permitted to determine whether legally competent evidence justifies the conclusions of the Superior Court and the [administrative agency]." Rhode Island Public Telecommunications Authority, 650 A.2d at 485. We have interpreted the phrase "legally competent evidence" as meaning "the presence of some or any evidence supporting the agency's findings." Environmental Scientific Corp., 621 A.2d at 208 (internal quotation marks omitted); see also Sartor v. Coastal Resources Management Council, 542 A.2d 1077, 1082–83 (R.I. 1988). However, this Court has also stated that "an administrative decision can be vacated if it is clearly erroneous in view of the reliable, probative, and substantial evidence contained in the whole record." Costa v. Registrar of Motor Vehicles, 543 A.2d 1307, 1309 (R.I.1988).

### III

### Analysis

DBR and PCI have articulated two primary contentions to this Court: (1) that the hearing justice erred when she overruled DBR's decision and concluded that the auto body labor rate survey must be used by insurers as the sole determinant of the prevailing auto body labor rate; and (2) that the hearing justice erred in ruling that the provisions of § 27–29–4.4 apply to every insurer that is authorized to sell

motor vehicle liability insurance in the State of Rhode Island (and not just to those insurers which write "more than 1% of the Rhode Island market in private passenger automobile insurance lines"). For the reasons set forth in this opinion, we conclude that the hearing justice erred in both respects.

## A

### Should the labor rate survey be used as *the sole determinant* of the prevailing auto body labor rate?

DBR and PCI first contend that it was error for the hearing justice to choose not to defer to DBR's interpretation of § 27–29–4.4—*viz.*, that the labor rate survey is only one factor for insurers to consider in setting the prevailing labor rate. It is their contention that the hearing justice should have deferred to DBR's decision as being a reasonable interpretation that was supported by legally competent evidence. We are in essential agreement with that contention.

In rendering its decision, DBR stated that it was "readily apparent * * * that [§ 27–29–4.4] is not 'unambiguous' " and that a "great deal of statutory construction was required in order for the Department to properly implement the statute under Insurance Regulation 108." DBR proceeded to state the reasons that had prompted it to conclude that the statute was ambiguous. Those reasons were (1) the fact that, "in Rhode Island there is no line of insurance called 'motor vehicle liability insurance;' " and (2) the fact that the statute used the terms "survey" and "questionnaire" to refer to the same docu-

ment.[5] DBR then engaged in a lengthy analysis, employing the rules of statutory construction, in order to ascertain the intent and purpose of the General Assembly when it enacted § 27–29–4.4. *See Cummings v. Shorey,* 761 A.2d 680, 684 (R.I. 2000) ("If statutory provisions appear unclear or ambiguous, * * * we shall examine the entire statute to ascertain the intent and purpose of the Legislature.").

■ In conducting its statutory analysis, DBR carefully parsed the language of the statute in an attempt to give meaning to every provision within the statute. *See State v. Bryant,* 670 A.2d 776, 779 (R.I. 1996) ("It is also a canon of statutory construction that the Legislature is presumed to have intended each word or provision of a statute to express a significant meaning, and the court will give effect to every word, clause, or sentence, whenever possible."); *see also Retirement Board of Employees' Retirement System of Rhode Island v. DiPrete,* 845 A.2d 270, 279 (R.I. 2004) ("We presume that the General Assembly intended to attach significance to every word, sentence and provision of a statute."). DBR also considered "a number of other practical concerns" that resulted from the fact that only approximately one-third of auto body shops had responded to the insurers' surveys. Having completed its analysis, DBR concluded that the General Assembly had intended that the labor rate survey was to serve as only one *factor* in determining the prevailing labor rate. DBR further stated that "an interpretation that the insurer must pay whatever is reported by the shops is not supported by the statutory language."

---

**5.** DBR further stated that "hundreds of insurers are 'licensed' in Rhode Island but do not actually write any insurance and, therefore, do not pay any automobile damage claims." DBR accordingly explained that, in promulgating Insurance Regulation 108, it "applied [§ 27–29–4.4] to all insurers writing more than 1% of the Rhode Island market in private passenger automobile insurance lines." As discussed *supra*, the hearing justice disagreed with DBR's view as to the reach of § 27–29–4.4.

It is our view that DBR's conclusion was reasonable.

We note that, in rendering her decision, the hearing justice stated that she was "not bound by decisions of law reached by an administrative agency, such as DBR." The hearing justice noted her disagreement with DBR's determination that the statute was ambiguous, and she then focused much of her written decision on three specific words or phrases,[6] which DBR believed resulted in statutory ambiguity. The hearing justice concluded that, since (in her view) those specific phrases were not ambiguous, the statute as a whole was not ambiguous; she further stated that the statute's words should be given what she characterized as their "plain and obvious meaning." The hearing justice thus concluded that "every insurer governed by § 27–29–4.4 must conduct a labor rate survey as provided in the statute and use that survey as *the sole determinant* of the prevailing auto body labor rate." (Emphasis added.)

It is our opinion that, in rendering her decision, the hearing justice failed to recognize the "well-recognized doctrine of administrative law that deference will be accorded to an administrative agency when it interprets a statute whose administration and enforcement have been entrusted to the agency * * * even when the agency's interpretation is not the only permissible interpretation that could be applied." *Pawtucket Power Associates Limited Partnership v. City of Pawtucket*, 622 A.2d 452, 456–57 (R.I.1993); *see Unistrut Corp. v. State Department of Labor and Training*, 922 A.2d 93, 99 (R.I.2007) ("[W]hen the administration of a statute has been entrusted to a governmental agency, deference is due to that agency's interpretation

of an ambiguous statute unless such interpretation is clearly erroneous or unauthorized."); *Gallison v. Bristol School Committee*, 493 A.2d 164, 166 (R.I.1985) ("[W]here the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized."); *see also Labor Ready Northeast, Inc. v. McConaghy*, 849 A.2d 340, 344–45 (R.I. 2004); *In re Lallo*, 768 A.2d 921, 926 (R.I. 2001).

The hearing justice's review of DBR's interpretation of § 27–29–4.4 should have been limited to determining whether such interpretation was "clearly erroneous or unauthorized." *See Gallison*, 493 A.2d at 166; *see also Labor Ready Northeast, Inc.*, 849 A.2d at 344–45; *In re Lallo*, 768 A.2d at 926. In our opinion, it was quite reasonable for DBR to have concluded that the statute is ambiguous—since it is clear to us (as it was to the agency) that the language of the statute is susceptible of more than one meaning. We further conclude that the interpretation of § 27–29–4.4 reached by DBR (after a complex analysis in which it applied pertinent canons of statutory construction) was neither clearly erroneous nor unauthorized, and we agree with DBR that the labor rate survey should not be *the sole determinant* in the setting of the prevailing labor rate. In other words, it is our opinion that the hearing justice erred in failing to defer to DBR's reasonable interpretation of § 27–29–4.4, even if she would have resolved the statutory issue differently had the interpretive role been solely hers in a *nisi prius* context.[7] *See Pawtucket Power As-*

---

6. The hearing justice focused her analysis on the following phrases in § 27–29–4.4: "[e]very insurance carrier;" "motor vehicle liability insurance;" and "survey."

7. We further note that an interpretation of

*sociates,* 622 A.2d at 456–57; *see generally North Providence School Committee v. North Providence Federation of Teachers, Local 920, AFT,* 945 A.2d 339, 345 n. 10 (R.I.2008).

## B

### Should § 27–29–4.4 apply to *every* insurance carrier in Rhode Island?

 The petitioners, DBR and PCI, further contend that it was error for the hearing justice to rule that § 27–29–4.4 "applies to *every* insurance carrier authorized to sell motor vehicle liability insurance in Rhode Island;" they argue that this particular alleged error was especially regrettable since the issue of the reach of the statute was not before the court at that time. (Emphasis added.) Again, we agree with petitioners' contention.

This Court has held that it is impermissible for a hearing justice to raise or to pass upon an issue that was not properly raised by the parties. *See Nye v. Brousseau,* 992 A.2d 1002, 1011 (R.I.2010); *Mottola v. Cirello,* 789 A.2d 421, 426 (R.I. 2002); *Direct Action for Rights and Equality v. Gannon,* 713 A.2d 218, 225 (R.I.1998); *Grant v. Briskin,* 603 A.2d 324, 327 (R.I.1992). It is clear from the record that Auto Body did not challenge (either in its original petition to DBR or in its administrative appeal) that portion of Insurance Regulation 108 which limits the applicability of the provisions of § 27–29–4.4 to insurers that write "more than one percent (1%) of the total premium volume of Motor Vehicle Liability Insurance." Accordingly, due to the fact that the issue was not before the Superior Court either expressly

or by necessary implication, we conclude that it was error for the hearing justice to rule upon that aspect of Insurance Regulation 108.

## IV

### Conclusion

For the reasons set forth in this opinion, the petitions for certiorari are granted, the judgment of the Superior Court is quashed, and the papers in the case may be remanded to the Superior Court with our decision endorsed thereon.

Justice GOLDBERG did not participate.

Justice INDEGLIA took no part in the consideration or decision of this petition.

---

§ 27–29–4.4 as requiring that the results of the labor rate survey be the sole determinant in setting the prevailing labor rate would lead to an absurd result—since such an interpretation would in effect permit rate-setting in the uncontrolled discretion of the auto body shops. *See generally Ellis v. Rhode Island Public Transit Authority,* 586 A.2d 1055, 1057 (R.I.1991).