DECISION
GTECH Corporation and West Greenwich Technology Associates, L.P. bring this appeal from a decision of the Rhode Island Division of Public Utilities and Carriers ("PUC"). For the reasons set forth below, this Court affirms the decision of the PUC. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 I FACTS AND TRAVEL
This controversy involves an office park known as GTECH Commercial Campus ("the Campus"). The Campus is comprised of certain parcels of land in West Greenwich, Rhode Island. (PUC Dec. at 3.)
As of June 30, 2006, the Campus consisted of three parcels with four buildings erected thereon. (PUC Dec. at 3; see Hr'g Tr. at 42-44.) Three of the buildings sat on the first parcel: an office building, a research center and a partially completed data center. Id. The fourth building, a daycare center, was located on the second parcel. Id. The third parcel was vacant. Id. As of June 30, 2006, the first two parcels were owned by a single party, Plaintiff West Greenwich *Page 2 
Technology Associates, L.P. ("WGTA" or "Plaintiff"), an affiliate of Plaintiff GTECH Corporation ("GTECH"). (Hr'g Tr. at 4:17-19, 43:14-16, 66:5-8, 78:13-18; GTECH Ex. 1 at ¶ 2.) GTECH owned the third parcel. Id.
One water line with a master water meter served all three of the completed buildings: the office building, the research center and the daycare center. (PUC Dec. at 3; Hr'g Tr. 46:15-22, 78:7-18.) On June 30, 2006, the Defendant, Kent County Water Authority ("KCWA"), granted approval for WGTA and GTECH to add the data center to that water line connection and master meter. (PUC Dec. at 3.)
Two pertinent events occurred in October 2006. First, GTECH transferred its interest in the third parcel to WGTA. (PUC Dec. at 4; see Hr'g Tr. at 42-44.) Next, WTGA subdivided the first parcel into three separate lots, A, B, and C.Id. The office building then sat on parcel A, the research center on parcel B, and the data center on parcel C. Id. The parcel that housed the daycare center became the fourth parcel, D, and the vacant parcel became the fifth parcel, E. Id.
WGTA subdivided the property in contemplation of a sale of four of the parcels to companies which were not affiliated with GTECH. (PUC Dec. at 3; Hr'g Tr. 46:15-22, 78:7-18.) WGTA planned to retain only parcel C, the data center. Id. Parcel A (with the office building) was to be transferred to West Greenwich Tech Park II; parcel B to West Greenwich Tech Park I (with the research center), and parcel D (with the daycare center) and parcel E were to be transferred to West Greenwich Tech Park, LLC. (Hr'g Tr. at 43:11-13.) All of the proposed transferees were companies affiliated with Condyne, LLC. Id. That sale was completed.Id.
After the aforementioned subdivision and sale of the parcels, the single water line and single master water meter serviced buildings that were no longer owned by a single company or *Page 3 
affiliated companies. (PUC Dec. at 4.) The GTECH affiliate WGTA, which had no connection to Condyne, LLC, owned parcel C (with the data center).
When KCWA learned that parcels A, B, D, and E were transferred or were about to be transferred to companies having no connection to the owner of parcel C, it notified Plaintiffs that they would have to construct an additional water line to service the Data Center. KCWA advised Plaintiffs that its Regulations did not permit a single water line and master water meter to service property owned by separate and unrelated entities. Id.
In a letter dated December 14, 2006 from Paul A. Victor, Senior Real Estate Manager of GTECH Corporation, [1] to KCWA, Plaintiff conceded the issue and agreed to develop and implement a solution to the problem which complied with KCWA Regulations. (Hr'g Tr. at 1:15, 95:9, 60:17-24, 61:1-8; Ex. 1.) Based upon that assurance, KCWA continued to provide water service through the common water line and master meter arrangement temporarily until Plaintiff could bring the property into compliance with KCWA Regulations. (Hr'g Tr. at 20:1-13; Ex. 1.)[2] A few months later, Plaintiff retracted its offer to implement a new system after reconsidering the issue and concluding that contrary to the position taken by KCWA, a master meter could serve separately owned parcels without violating KCWA Regulations. (PUC Dec. at 4, Ex. 1)
In November 2007, KCWA informed Plaintiff that it would terminate water service to the data center unless it complied with KCWA Regulations. (PUC Dec. at 5.) The parties discussed a possible settlement agreement whereby GTECH would be responsible for the water bills for the *Page 4 
entire Campus, KCWA's typical liens would attach to all five parcels, and KCWA would have easements over all five parcels for maintenance. (PUC Dec. at 5-6.) In the end, KCWA rejected the proposal and opted not to enter into such an agreement. (PUC Dec. at 6.)
In July 2008, Plaintiffs brought a complaint against KCWA with the PUC pursuant to G.L. 1956 § 39-4-3. (PUC Dec. at 1.) Specifically, Plaintiffs alleged that KCWA misinterpreted its own Regulations and behaved in an arbitrary, unfair, and capricious manner. (PUC Dec. at 8.) On April 27, 2009, the PUC conducted a hearing on this complaint. (PUC Dec. at 2.) Although much of the testimony at the hearing focused on equitable matters (Tr. at 46-50), the PUC decided the controversy as a pure question of regulatory construction.See PUC Dec. at 15.
 II STANDARD OF REVIEW
The scope of the Court's review is limited by the Rhode Island Administrative Procedures Act, which mandates that
 [t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Section 42-35-15(g). *Page 5 
The scope of Superior Court review of an agency decision has been characterized as "an extension of the administrative process."Rhode Island Public Telecommunications Authority v. Rhode IslandState Labor Relations Board, 650 A.2d 479, 484 (R.I. 1994). As such, "judicial review is restricted to questions that the agency itself might properly entertain." Id. (citingEnvironmental Scientific Corp. v. Durfee,621 A.2d 200, 208 (R.I. 1993)). "In essence, if `competent evidence exists in the record, the Superior Court is required to uphold the agency's conclusions.'" Auto Body Association of Rhode Island v.State of Rhode Island Department of Business Regulation et al.,996 A.2d 91, 95 (R.I. 2010) (quoting Environmental ScientificCorp., 621 A.2d at 208). Accordingly, this Court defers to the administrative agency's factual determinations provided that they are supported by legally competent evidence.Arnold v. Rhode Island Department of Labor and Training Board ofReview, 822 A.2d 164, 167 (R.I. 2003). Legally competent evidence is "`some or any evidence supporting the agency's findings.'"Auto Body Association of Rhode Island, 996 A.2d at 95 (quotingEnvironmental Scientific Corp., 621 A.2d at 208).
Deference is due to an agency's interpretation of its own rules and regulations. Gonzales v. Oregon,546 U.S. 243, 244 (2006); Citizens Savings Bank v. Bell,605 F.Supp. 1033, 1041 (D.R.I. 1985); State v. Cluley,808 A.2d 1098, 1103 (R.I. 2002). Similarly, the Court will defer to an agency's interpretation of an ambiguous statute "`whose administration and enforcement have been entrusted to the agency * * * even when the agency's interpretation is not the only permissible interpretation that could be applied.'" Auto Body Association ofRhode Island, 996 A.2d at 97 (quoting Pawtucket PowerAssociates Limited Partnership v. City of Pawtucket,622 A.2d 452, 456-57 (R.I. 1993)) (redactions in original). Furthermore, "[A] reviewing court *Page 6 
should accord an agency's decision considerable deference when that decision involves a technical question within the field of the agency's expertise." Rhode Island Higher Education AssistanceAuthority v. Department of Education,929 F.2d 844, 857 (1st Cir. 1991) (internal quotations omitted). The Court will defer to an agency's interpretation so long as it is not clearly erroneous or unauthorized. Auto Body Association of RhodeIsland, 996 A.2d at 97.
 III STANDING
In October 2006, GTECH Corporation transferred its interest in the GTECH Commercial Campus to its affiliate West Greenwich Technology Associates, L.P., thereby divesting itself of all legal interest that it had in the property. See Cortellesso v. Town ofSmithfield Zoning Bd. of Review, 888 A.2d 979, 981 (R.I. 2005). GTECH Corporation is without standing to seek review of an order of the Rhode Island Division of Public Utilities and Carriers. Although the PUC permitted GTECH to appear before the Commission, that permission does not create standing. GTECH is not entitled to institute an independent suit to set aside the Commission's order in the absence of resulting actual or threatened legal injury to it.See Blackstone Valley Chamber of Commerce v. Public UtilitiesCom'n, 452 A.2d 931, 933 (R.I. 1982). Under the terms of G.L. 1956 § 39-5-1 (Reenactment 1977), only persons "aggrieved by a decision or order of the commission" have standing. Despite our liberalized standing requirements, petitioner must still allege a personal stake in the controversy: his own-injury in fact.Id. Mere interest in a problem, no matter how longstanding and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization "adversely affected" or "aggrieved." Id. *Page 7 
West Greenwich Technology Associates, L.P. properly brings this appeal because of its continued property interest in Parcel C of the GTECH Commercial Campus. See Cortellesso, 888 A.2d at 981. Any reference to "GTECH" in the decision, in the correspondence between the parties, or in the PUC Decision, is implicitly meant to include the affiliate company West Greenwich Technology Associates, L.P. unless otherwise specified. See PUC Dec. at 1; Tr. at 40:17-21.
 IV THE PUC AND KCWA
KCWA is a regulated utility pursuant to Title 39 of the General Laws of Rhode Island. The PUC is the state agency entrusted with broad powers and responsibilities for the regulation of public utilities. See § 39-1-1(c); In re Kent County WaterAuthority Change Rate Schedules, 996 A.2d 123, 126 (R.I. 2010). The General Assembly endowed the PUC with the "exclusive power and authority to supervise, regulate, and make orders" regarding the agency's broad policy goals, which include fair regulation in the interest of the public, conservation, maintenance of just and reasonable rates, and cooperation with sister states and the federal government. Sections 39-1-1(a)(3)-(c). "Specifically, those powers include implementing the policies of the state in regulating the public utilities to achieve the `ultimate policy goals of providing for adequate, efficient, and economical energy, communication, and transportation services and water supplies at just and reasonable rates.'" Id. at 126 (quoting Providence GasCo. v. Burke, 419 A.2d 263, 269 (R.I. 1980)). The PUC plays an important role in regulating utilities in general and water authorities in particular. Id. As the Public Utilities Commission is a quasi-judicial tribunal, the PUC is concerned with supervising and regulating public utilities and advocating for the public interest. Sections 39-1-1(c), 39-1-3(b);Id. at 125-26. *Page 8 
KCWA has the authority to "make bylaws for the management and regulation of its affairs." Sections 39-16-3, 39-16-8(7). The PUC investigates consumer complaints against utilities, including complaints against KCWA. While KCWA has the authority to promulgate its own Regulations and manage its own affairs, the PUC has broad authority to alter those Regulations and to order KCWA to change practices that it finds to be unjust, unreasonable, or insufficient. Sections 39-4-10, 39-16-8(7); seeId. at 130 (explaining that the PUC may not interfere with KCWA's purely managerial functions). Sections 39-1-2(20),39-4-3, 39-4-10, 39-16-9. For example, if the PUC finds that any act, practice, regulation, etc. is
 unjust, unreasonable, insufficient, preferential, unjustly discriminatory, or otherwise in violation of any of the provisions of chapters 1-5 [of Title 39 of the General Laws] or that any service of any such public utility is inadequate or that any service which can be reasonably demanded cannot be obtained, the division shall have power to substitute therefore such other [R]egulations, measurements, practices, service, or acts, and to make such order respecting, and such changes in the [R]egulations, measurements, practices, service, or acts, as shall be just and reasonable[.] Section 39-4-10.
The PUC's power to reverse or alter KCWA's acts and practices on these grounds is tantamount to a power to interpret KCWA's Regulations. Id. Its broad power to change a public utility's Regulations becomes even more expansive if the PUC finds that the regulation is a threat to the public safety.See § 39-4-11. Notwithstanding KCWA's rulemaking authority, the General Assembly has delegated policymaking prerogatives regarding the regulation of water service to the PUC.
 V THE KENT COUNTY WATER AUTHORITY REGULATIONS
The parties offer conflicting interpretations of KCWA's Regulations. Plaintiff contends that the PUC's interpretation of KCWA's Regulations violated statutory provisions, exceeded the *Page 9 
PUC's authority, was affected by error of law, and constituted an abuse of discretion. Plaintiff reads the Regulations as permitting master metering for separately owned parcels. Alternatively, KCWA construes its Regulations as prohibiting master metering for separately owned parcels of land.
The lynchpin of Plaintiff's argument is § 2.5.6.2 of KCWA Regulations, which reads: "[i]n no case shall two separate buildings occupied by different owners or tenants be supplied by one service or meter unless such service meets all of the requirements of master metering." Rules and Regulations of the Kent County Water Authority ("KCWA Regulations") § 2.5.6.2. In Plaintiff's view, this section of the Regulations is an implicit acknowledgement that parcels under different ownership may be served by master meters. Plaintiff further relies on language contained in § 2.5.4.1, which states: "[m]ultiple occupancy commercial, industrial and residential developments such as condominiums, apartment complexes, strip malls, large mills, and all other private type complexes shall be master metered unless determined not to require a master meter under section 2.5.3." Plaintiff reads the examples of developments in this section as a non-exhaustive list that includes "occupancies in different ownership." (Pl.'s Mem. 9.) In support of their argument, Plaintiff further cites § 2.2.14.1, which reads: "[i]n no case shall two or more separate buildings or multi unit condominiums in which each unit or building is owned by different owners be supplied by one meter except by a master meter connection system, as approved by Kent County Water Authority." Plaintiff argues that KCWA clearly envisioned master metering of separately owned parcels when it drafted this regulation. Furthermore, Plaintiff contends that the Regulations do not define master metering in terms of property ownership; rather, the Regulations state that master meters serve "more than one user, tenant, or facility[.]" KCWA Regulations § 2.5.4.2. *Page 10 
The PUC, reading KCWA Regulations as a whole, adopted KCWA's interpretation of its Regulations — that the Regulations allow master metering only for real estate parcels with ownership in common. (PUC Dec. at 10, 14.) The PUC found "that Sections 1.13.1, 1.13.2, 2.3.1.8, 3.1.2, 2.5.1.1, 2.5.6.2, 2.5.6.6, 2.2.14.1, 2.2.14.2, 2.3.4.1, 2.3.4.5, 2.5.4.1, 2.5.4.2, 2.5.6.1, [and] 2.5.6.2 sufficiently manifest a prohibition against multiple land owners drawing water from a single water line, through a master meter." (PUC Dec. at 15.) The PUC accepted the position of KCWA and found that the Regulations described above recognize "a distinction between `customers' and `owners'[,] on the one hand, and `occupants' on the other." (PUC Dec. at 15.) It harmonized §§ 2.5.6.2 and 2.2.14.1 with § 2.2.14.2 and other Regulations that manifest a prohibition on master metering for separately owned parcels by finding that the "different owners" referred to in §§ 2.5.6.2 and 2.2.14.1 means owners of property, such as condominiums or apartment complexes, where an individual may own a unit in a development or building, but the realty upon which the structures sit is owned by another entity such as a condominium association. (PUC Dec. at 15-16.) The PUC rejected the argument of Plaintiff in favor of the position of KCWA by interpreting the Regulations to mean that the kinds of properties suitable for master metering in § 2.5.4.1 — "[m]ultiple occupancy commercial, industrial or residential developments such as condominiums, apartment complexes, strip malls, large mills, and all other private type complexes" — must have a common thread of ownership, such as ownership by a condominium association. (PUC Dec. at 16.)
Plaintiff cannot prevail in this appeal unless it proves that KCWA's interpretation of its own Regulations was unreasonable. The Court does not substitute its interpretation of the Regulations for that advanced by KCWA and accepted by the PUC so long as their interpretation is not unreasonable. Both the PUC and KCWA, the author of the Regulations with clear *Page 11 
policymaking authority under § 39-16-8, have arrived at the same interpretation of the Regulations. See Charles H. Koch, Jr.,West'sFederal Administrative Practice § 7756 (3d ed. 2001) ("The policymaking agency's interpretation of the law or judgments as to the policy is authoritative. The adjudicating agency's application of the law or policy has force, however, unless it disagrees with the policymaking agency."). As such, the Court defers to their analysis of the Regulations so long as their interpretation is reasonable.
This Court applies a different standard when interpreting Regulations regarding water use from the standard it employs when construing zoning ordinances. Where a zoning ordinance is ambiguous, the Court has been willing to construe the ambiguity in favor of the landowner because such restrictions are in derogation of the property owner's common-law right to use her property as she wishes.See Denomme v. Mowry, 557 A.2d 1229, 1231 (R.I. 1989). While a landowner enjoys a common-law right to use his or her land as he or she wishes, there is no such corresponding common-law right to water service. As such, in the instant case, where water service, rather than zoning regulations is at issue, the Court does not construe ambiguities, if any, in favor of the customer. See id. On the contrary, in its review, similar to reviewing a municipal zoning board, this Court must give deference to the decision of the Board.See Monforte v. Zoning Bd. of Review of East Providence,93 R.I. 447, 449, 176 A.2d 726, 728 (1962). The members of the Board are presumed to have special knowledge of the rules related to the administration of metering regulations. See id. At the same time, the Court is mindful that the deference accorded such a board must not rise to the level of "blind allegiance." See CitizensSav. Bank, 605 F.Supp. at 1042. The Court will give deference to any agency interpretation of its own Regulations so long as they are not clearly erroneous or unauthorized. See Auto Body *Page 12 Association of Rhode Island, 996 A.2d at 95 (R.I. 2010) (quoting Environmental Scientific Corp., 621 A.2d at 208.
This Court examines the pertinent sections of the Regulations mindful of this standard. Section 2.2.14.2 states that "[s]eparately owned premises or property shall have a separate service with separate shut off and meter. In the case of private, commercial or combined developments, a master meter is required. . . ." Implicit in this section is the assumption that the category of "private, commercial or combined developments" does not include "separately owned premises or property[.]" KCWA Regulations § 2.2.14.2. Similarly, § 1.13.1 states that a service pipe between the curb and the structures served by the water connection "is owned and maintained by the property owner." This provision arguably requires a single property owner per water line. Otherwise, multiple property owners served by a single water line and master meter would be faced with the problem of having to co-own a piece of pipe (by operation of law, not by agreement) which might require maintenance.
Furthermore, under the Regulations, water bills "constitute a lien on the real estate of the owner . . .; when more than one customer in the same building is supplied from the same service, the bill for the whole supply furnished through such service will be rendered to the owner of the property." KCWA Regulations § 2.3.1.8. If properties owned by multiple different owners were served by a master meter and received only one water bill, KCWA and the public would be faced with the conundrum of determining which properties are encumbered with liens and which are not. These sections, read together, reveal an intent on the part of the drafters that master meters would not serve separately owned parcels of land.
After reviewing the Regulations in their entirety, the Court finds that the interpretation advanced by KCWA and accepted by the PUC on review is not unreasonable. Since the PUC *Page 13 
and KCWA agree in their interpretations of the Regulations, the Court defers to the PUC's interpretation. See id. As such, the PUC's interpretation of the Regulations as precluding master metering for separately owned parcels of realty is neither clearly erroneous nor an abuse of discretion and is not in excess of statutory authority. Therefore, the Court accepts KCWA's interpretation of the regulations whose administration and enforcement is entrusted to it. Auto Body Association of RhodeIsland, 996 A.2d at 97. Courts will defer to an agency's reasonable interpretation of its own Regulations.Gonzales, 546 U.S. at 244; Citizens Sav. Bank,605 F.Supp. at 1041; Cluley, 808 A.2d at 1103. Having found that the PUC's and KCWA's interpretation of the Regulations was reasonable and giving deference to the PUC's interpretation of those Regulations which were not clearly erroneous, this Court affirms the decision of the PUC.
 VI CONCLUSION
After review of the record and the arguments of all parties, the Court finds that the PUC did not violate statutory provisions, exceed its statutory authority, or commit an error of law. The PUC's decision was not arbitrary, capricious, or characterized by an abuse of discretion. Plaintiffs' substantial rights have not been prejudiced. Therefore, the decision of the Division of Public Utilities and Carriers is affirmed. Counsel shall submit the appropriate judgment for entry.
[1] Although the data center was owned by WGTA, not GTECH, it is clear that the author of the letter, Paul A. Victor, Senior Real Estate Manager for GTECH Corporation, was acting on behalf of WGTA, an affiliate of GTECH. (Tr. at 95.9)
[2] Letter dated December 14, 2006 from Paul A. Victor to Timothy Brown, General Manager and Chief Engineer of Kent County Water Authority. (Tr. at 95:9, Ex. 1)