DECISION
Before the Court is Albert Turcotte's ("Turcotte" or "Appellant") appeal from a decision of the Retirement Board of the Employees' Retirement System of the State of Rhode Island ("Retirement Board"). In this matter, the Retirement Board denied Appellant's application for an accidental disability pension. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 I Facts and Travel
This case arises out of an injury that Turcotte, a carpenter working at Facilities and Maintenance at the Department of Administration, sustained while carrying Lexan to be installed on windows. (Retirement Board Record Ex. 3, Employer's Disability Statement, Dec. 23, 2008; Retirement Board Record Ex. 5, Injury/Accident Report, Dec. 17, 2006.) On November 16, 2008, he applied to the Employees' Retirement System of Rhode Island ("ERSRI") for accidental disability retirement. (Retirement Board Record Ex. 1, Disability Retirement Application, Nov. 16, 2008.) In this application, he stated that his medical reason for disability was a torn left rotator cuff bulge.Id. *Page 2 
On January 8, 2010, the Disability Subcommittee ("Subcommittee") recommended a denial of Turcotte's application for an accidental disability pension. (Retirement Board Record Ex. 19, Subcommittee Decision, Jan. 8, 2010 ("Subcommittee Decision") at 3.) Specifically, the Subcommittee concluded that Turcotte's injury was not the natural and proximate cause of an accident in the performance of duty because Turcotte failed to report the accident to his supervisor until two weeks after its occurrence, and the accident report was completed three weeks later.Id. at 1-2. Moreover, the Subcommittee found evidence of a prior history of problems with that shoulder, as well as evidence of pain while "pushing a large rock," to be significant in its determination. Id. at 3.
On February 11, 2010, Turcotte appealed the decision of the Subcommittee, and thus, the Subcommittee held a hearing on the issue on May 7, 2010. (Retirement Board Record Ex. 20, Letter from Turcotte to Arne Perry, Feb. 11, 2010; Retirement Board, Ex. 34, Subcommittee Tr., May 7, 2010 ("Subcommittee Tr.") at 1.) At this hearing, the Subcommittee heard testimony from Turcotte about the incident and his injury and argument from counsel, and considered the submitted evidence. (Subcommittee Tr. at 5-30.) Subsequently, on May 7, 2010, the Subcommittee issued a decision which recommended the denial of Turcotte's application for an accidental disability pension. (Retirement Board Ex. 34, Subcommittee Decision, May 7, 2010, at 3.) The Subcommittee particularly "continue[d] to be concerned about Turcotte's history of shoulder problems, and about various injuries apparently sustained around the same time, including an injury to his shoulder pushing a rock, prior to the allegedly disabling incident involving Lexan." Id. at 3. *Page 3 
On May 12, 2010, the Retirement Board voted to deny Turcotte's application for an accidental disability pension. (Retirement Board Ex. 35, Letter from Arne Perry to Turcotte, June 17, 2010.) In the Assistant Director of Member Service's letter to Turcotte, he explained that this decision was based on the Subcommittee's recommendation to deny the application because of the lack of evidence that the work incident was the natural and proximate result of an accident. Turcotte appealed that decision on June 29, 2010. (Retirement Board Ex. 36, Turcotte Appeal to Retirement Board.)
The Retirement Board held a hearing on the matter on September 8, 2010. (Retirement Board Ex. 40, Retirement Bd. Tr., Sept. 8, 2010 ("Retirement Bd. Tr.") at 1.) During this hearing, the Retirement Board heard argument from counsel and discussed the evidence. Id. at 4-17. After a vote, the Chair of the Subcommittee found that "[t]here [were] eight affirmative votes. The motion is to uphold the decision of the Disability Subcommittee." Id. at 18. On September 9, 2010, the Executive Director of ERSRI informed Turcotte that his appeal was denied. (Retirement Board Ex. 41, Notice of Denial, Sept. 9, 2010.)
The court reporter present at the September 8, 2010 meeting certified the transcript on September 19, 2010. (Retirement Bd. Tr. at 17.) Notably, that transcript records seven "aye" votes, which "uphold the decision of the Disability Subcommittee." Id. at 17-18. The votes recorded "aye" on this transcript are from the following members: Deming for Treasurer Caprio, Alger, Beardsley, Benell, Heintzelman, Rodriguez, Riendeau.Id. Eight votes are recorded "nay," to reject the decision of the *Page 4 
Disability Subcommittee. Id. The following members votes are recorded "nay": Finelli, Boudreau, Boyce, Maguire, Meehan, Mullaney, Prata, and Riendeau. Id.
On September 21, 2010, Turcotte filed his appeal with this Court. Therein, Turcotte argues that because there were seven votes to uphold the appeal and eight votes to reverse it, the Board, in fact, voted that disability benefits should be awarded. On December 22, 2010, the court reporter present at the September 8, 2010 meeting corrected Board member Mullaney's vote to "aye." Thus, the Retirement Board maintains that the appeal herein should be denied because the Plaintiff's argument is based on an incorrect version of the transcript.
 II Standard of Review
The scope of the Court's review is limited by the Rhode Island Administrative Procedures Act, which mandates that:
 "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Section 42-35-15(g). *Page 5 
Accordingly, this Court defers to the administrative agency's factual determinations provided that they are supported by legally competent evidence. Arnold v. Rhode Island Dep't of Labor andTraining Bd. of Review, 822 A.2d 164, 167 (R.I. 2003). Legally competent evidence is "`some or any evidence supporting the agency's findings.'" Auto Body Ass'n of Rhode Island v. Department ofBusiness Regulation, 996 A.2d 91, 95 (R.I. 2010) (quotingEnvironmental Scientific Corp. v. Durfee,621 A.2d 200, 208 (R.I. 1993)).
This Court reviews questions of law de novo.Narragansett Wire Co. v. Norberg,118 R.I. 596, 607, 376 A.2d 1, 6 (1977). "`When a statute is clear and unambiguous we are bound to ascribe the plain and ordinary meaning of the words of the statute.'" Town of Burrillville v.Pascoag Apartment Assocs., 950 A.2d 435, 445 (R.I. 2008) (quotingUnistrut Corp. v. Rhode Island Dep't of Labor and Training,922 A.2d 93, 98 (R.I. 2007)). However, the Court will defer to an agency's interpretation of an ambiguous statute "`whose administration and enforcement have been entrusted to the agency * * * even when the agency's interpretation is not the only permissible interpretation that could be applied.'" Auto Body Ass'n of RhodeIsland, 996 A.2d at 97 (omission in original) (quotingPawtucket Power Assocs. Limited Partnership v. City ofPawtucket, 622 A.2d 452, 456-57 (R.I. 1993)) (redactions in original). The Court will not defer to an agency's statutory interpretation if it is "clearly erroneous or unauthorized." Id. (quoting Unistrut Corp.,922 A.2d at 99).
ERSRI uses a two-tier review process in which a hearing officer hears grievances and then issues a written decision that is submitted to the Retirement Board. The Board considers the decision, as well as any further briefs, and subsequently renders its own decision. ERSRI Reg. § 10.00(a). This two-tier system is similar to a funnel. *Page 6 Environmental Scientific Corp. v. Durfee,621 A.2d 200, 207-08 (R.I. 1993). At the first level of review, the hearing officer "sits as if at the mouth of the funnel" and analyzes the evidence, issues, and live testimony. Id. At the second level of review, the "discharge end" of the funnel, the Board only considers evidence that the hearing officer received first-hand.Id. Therefore, the "further away from the mouth of the funnel that an administrative official is . . . the more deference should be owed to the fact finder." Id.
 III Analysis
Appellant argues that the original transcript demonstrates that the Retirement Board voted to reject the Subcommittee's recommendation. Nevertheless, through its memorandum, the Retirement Board, in essence, requests the Court to supplement the record with the revised transcript, which shows that the Retirement Board adopted the Subcommittee's recommendation to deny Turcotte's pension. Addressing this issue, § 42-35-15(e) provides in pertinent part:
 "If, before the date set for the hearing, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court."
Similarly, in federal agency appeals, if any material information is misstated in the record, "the parties may correct it by stipulation or the court can order it corrected." Moore's Federal Prac.
3d § 316.12; see Fed. App. R. P. 16(b). A court may also order a supplemental record to be prepared and filed. Id. In the instant matter, the revised transcript is material because its modification changes the outcome of the Retirement *Page 7 
Board's vote. See Boyer v. Secretary of Health and HumanServs., 767 F.2d 919 (6th Cir. 1985) (unpublished table decision) ("The significance of Rule 16(b) lies mainly in the area of inadvertent errors and omissions in the transcript. . . .").[1]
This Court, however, is limited to an examination of the certified record. Johnston Ambulatory Surgical Assocs. v. Nolan,755 A.2d 799, (R.I. 2000). Currently, the transcript within this certified record is the first, allegedly incorrect transcript. Thus, for this Court to consider another transcript, the Retirement Board must re-certify the record with the corrected transcript.
 IV Conclusion
For the foregoing reasons, this Court cannot decide the appeal based on the record before it. The Retirement Board shall present an appropriate motion pursuant to § 42-35-15(e), accompanied by an affidavit from the stenographer. The parties may also submit further memoranda on this agency appeal.
[1] A remand to the Retirement Board to address this issue is unnecessary because the revised transcript does not establish any new evidence for the Retirement Board to consider. SeeLemoine v. Department of Mental Health, Retardation andHosps., 113 R.I. 285, 291 320 A.2d 611, 615 (1974) (finding that § 42-35-15(e) "affords the litigants a further opportunity to present additional evidence, and it likewise gives the agency a chance to modify its original action if warranted by the new evidence").