DECISION
Appellant Edward A. Kent ("Kent") appeals the December 2, 2009 Final Agency Decision and Order of the Rhode Island Department of Environmental Management ("DEM"), denying the application of Kent to construct a garage and foundation at his property in South Kingstown, Rhode Island. Jurisdiction in the instant matter is pursuant to G.L. 1956 § 42-35-15.
 I Facts and Travel
Kent is the owner of real property located in the Town of South Kingstown, identified as Tax Assessor's Plot 34-2, Lot 76 and 77. In late 2004, Kent started construction on a three car garage addition to a previously existing dwelling without first receiving the necessary permits for the restoration project. On June 7, 2005, the DEM issued a "Notice of Violation ("NOV") to Kent alleging certain violations of § 2-1-22 et seq., and the "Rules and Regulations Governing the Administration and Enforcement of the Freshwater Wetlands Act" (April 1998) (the "DEM Rules and Regulations").
Following the issuance of the NOV, a Consent Agreement was executed between the DEM and Kent. Pursuant to said Consent Agreement, the parties acknowledged that the DEM *Page 2 
has jurisdiction over the freshwater wetlands at issue, and had personal jurisdiction over Kent. Furthermore, the Consent Agreement allowed Kent to submit a complete Application to Alter Freshwater Wetlands (the "Application") to the DEM's "Office of Water Resources, Freshwater Wetland Permitting Program" (the "FWPP") to seek approval to alter 4900 sq. ft. of freshwater wetlands located at the subject property, Plat 34-2, Lots 76 and 77, within one hundred and twenty (120) days from the execution of the Consent Agreement. In the Consent Agreement, the DEM agreed to hold the restoration requirements for the property in abeyance provided Kent obtained the authorization to alter the wetlands from the FWPP, a final agency decision issued by the DEM's Administrative Adjudication Division (the "AAD"), or a permit resulting from a Superior Court Decision on Kent's timely appeal of the AAD's Final Agency Decision (the "Decision").
In accordance with the Consent Agreement, Kent filed his application with the FWPP on January 9, 2006 (the "Application"). The Application was received by the FWPP in accordance with the DEM Rules and Regulations. Kent supplemented the Application with a "Narrative of Biological Impact for Red Feather Trail" on February 22, 2006, which was prepared by Natural Resource Services, Inc. (Appl.'s Ex. 4.) In response to comments made by the DEM on the Application, Kent revised the site plans. (FWPP Ex. 5.)
The DEM then put the revised Application out for a thirty day public comment period. DEM staff prepared reports, which were provided to the FWPP for use in the decision making process. (FWPP Ex. 6-7.) In a report dated June 20, 2007, DEM Staff Biologist Nancy Freeman noted that she was not satisfied that the project would not result in a significant reduction in the suitability of the wetlands for use by any resident, migratory, seasonal, transient, facultative or obligative wildlife species. (FWPP Ex. 6 at 7.) However, in his April 27, 2007 report, DEM *Page 3 
Staff Engineer Gregory Swift noted that he had no engineering objections to the proposed project. (FWPP Ex. 6 at 23.) A Supervisor Determination was signed and approved by the DEM's Permitting Supervisor, Charles A. Horbert, which memorialized the DEM staff's objections to the Application. (FWPP Ex. 7.)
After completion of the application process, including the public notice period, the FWPP reviewed the Application and determined that the impacts to wildlife habitat functions and values were not avoided and/or minimized to the extent possible to avoid detrimental alterations. In a "Notice of Denial" letter dated August 2, 2007, the FWPP found that:
 "a. The Applicant had not demonstrated that impacts to freshwater wetlands were avoided to the maximum extent possible pursuant to Rule 10.01(A); thereby resulting in an unnecessary alteration to freshwater wetlands;
 b. The applicant had not demonstrated that impacts to freshwater wetlands, which were unavoidable, were reduced to the maximum extent possible pursuant to Rule 10.01(B); thereby resulting in an unnecessary alteration to freshwater wetlands;
 c. The Applicant has not demonstrated that the proposed project was in compliance with the Review criteria set forth in Rule 11.02 and specifically Rule 11.02(6), thereby resulting in an undesirable alteration to freshwater wetlands;
 d. The proposed project will contribute to adverse cumulative impacts on wetlands thereby resulting in an undesirable alteration to freshwater wetlands;
 e. The Applicant had not shown that he has, to the maximum extent possible, mitigated for all damaging effect of the proposed project upon the functions and values provided by the subject freshwater wetlands thereby resulting in an undesirable alteration to freshwater wetlands." (FWPP Ex. 8 at 2.)
Based on the foregoing, the FWPP determined that the project was inconsistent with the Freshwater Wetlands Act and that Kent's project was inconsistent with the DEM Rules and Regulations. Kent's Application was therefore denied in accordance with Rule 9.05(E)(2) of the DEM Rules and Regulations which states in pertinent part: *Page 4 
 "In accordance with Section 2-1-21 of the [Freshwater Wetlands] Act, approval of a proposed alteration to any wetland will be denied by the Director if the project as proposed would result in a random, unnecessary, and/or undesirable alteration of a freshwater wetland, as those terms are defined herein, as such alterations are not in the best public interest. Such projects are therefore inconsistent with Sections 2-1-18 and 2-1-19 of the [Freshwater Wetlands] Act and these Rules and the Director will deny such applications in accordance with Section 2-1-21 of the [Freshwater Wetlands] Act."
The DEM Rules and Regulations define the terms "undesirable" and "unnecessary" as used in Rule 9.05(E)(2) as:
 "5.89 Undesirable Alteration means any proposed activity or alteration which is likely to reduce or degrade any freshwater wetland functions and values as set forth herein. Any activity, alteration or proposed project will be considered "undesirable" unless the applicant shows that she or he has, to the maximum extent possible, mitigated for any damaging effects of the proposed project upon the functions and values provided by any freshwater wetlands.
 5.90 Unnecessary Alteration means any proposed alteration which is not essential, vital, or indispensable to the proposed project and which can be achieved without altering or disturbing freshwater wetlands. Any activity, alteration, or project will be considered "unnecessary," unless the applicant shows that:
 A. Alterations of freshwater wetlands and the functions and values they provide have been avoided by exhausting all other non-wetland alternatives; and
 B. The Alterations planned for the wetland have been reduced to the maximum extent possible to prevent any damaging or detrimental effects upon wetland functions and values from activities which could otherwise be avoided."
Based on the foregoing, the Application was denied by the FWPP on August 2, 2007. Kent filed a timely appeal with the AAD.
Administrative hearings were held on March 23, and 24, 2009 in accordance with AAD procedure. During these hearings, several DEM members, including Staff Biologist Nancy Freeman and Permitting Supervisor Charles Horbert, expressed concerns that the Application's *Page 5 
wetland alterations were not calculated correctly. The DEM members noted that they relied on their own calculations when preparing their reports, rather than those made by Natural Resource Services Inc. Furthermore, Ms. Freeman provided testimony that Kent could have addressed certain concerns regarding impact avoidance pursuant to the DEM Rules and Regulations by building the proposed project on a different part of the Property. Permitting Supervisor Charles A. Horbert bolstered this testimony, noting that different alternatives and technologies could have been implemented in order to minimize the resulting impact to wetlands.
After considering these factors, the AAD issued its Decision on December 2, 2009. The Decision made nineteen (19) findings of fact. The AAD found that Kent had not proven by a preponderance of the evidence that the Application as submitted to the DEM was consistent with the Rhode Island Freshwater Wetlands Act and was protective of the environment and the health, welfare, and general well being of the populace. As such, Kent's appeal was denied by the AAD.
On January 12, 2010, Kent filed the instant action pursuant to § 42-35-15. On February 8, 2010, DEM filed the administrative record with this Court in response to Appellant's Complaint. Both the DEM and Kent have filed memoranda of law with this Court.
 II Standard of Review
This Court "sits as an appellate court with a limited scope of review" when reviewing the decisions of an administrative agency such as the DEM. Mine Safety Appliance Co. v. Berry,620 A.2d 1255, 1259 (R.I. 1993). Appellate review of agency actions is governed by the Rhode Island APA, § 42-35-1, et seq. Islein v.Retirement Bd. Of Employees' Retirement System of Rhode Island,943 A.2d 1045, 1048 (R.I. 2008) (citing Rossi v. Employees'Retirement System *Page 6 of Rhode Island, 895 A.2d 106, 109 (R.I. 2006)). The applicable standard of review codified at § 42-35-15(g) provides:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inference, conclusions or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
"In essence, if `competent evidence exists in the record, the Superior Court is required to uphold the agency's conclusions.'"Auto Body Association of Rhode Island v. State of Rhode IslandDepartment of Business Regulation et al.,996 A.2d 91, 95 (R.I. 2010). Accordingly, this Court defers to the administrative agency's factual determinations provided that they are supported by legally competent evidence. Arnold v. RhodeIsland Department of Labor and Training Board of Review,822 A.2d 164, 167 (R.I. 2003). Additionally, when examining the certified record, this Court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. Interstate Navigation Co. v. Dis. Of Pub.Utils. Carriers of R.I., 8724 A.2d 1282, 1286 (R.I. 2003) (citations omitted).
The DEM in this case utilizes a two-tier review process in which grievances are heard first by a hearing officer, who issues a written decision that is submitted to the Director of the DEM. The Director considers the decision, along with any further briefs or arguments, and renders his or her own decision. This two-step procedure has been likened to a funnel. Environmental ScientificCorp. v. Durfee, 621 A.2d 200, 207-08 (R.I. 1993). The hearing *Page 7 
officer, at the first level of review, "sits as if at the mouth of the funnel" and analyzes all of the evidence, opinions, and issues.Id. The DEM Director, stationed at the "discharge end" of the funnel, the second level of review, does not receive the information considered by the hearing officer first hand. Id. Our Supreme Court has held, therefore, that the "further away from the mouth of the funnel that an administrative official is . . . the more deference should be owed to the fact finder." Determinations of credibility by the hearing officer, for example, should not be disturbed unless they are "clearly wrong." Id. at 206.
Accordingly, this Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Baker v. Dept. ofEmployment Training Bd. Of Review, 637 A.2d 360, 363 (quotingMilardo v. Coastal Res. Mgmt. Council,434 A.2d 266, 272 (R.I. 1981)). However, because most agencies are presumed to have knowledge and expertise in their respective fields, they have wide discretion in determining the weight or probative value to be given the testimony of the expert witness. Stein,Administrative Law § 28.03. The Court also reviews an agency decision to determine whether it was "otherwise occasioned by error of law." Tierney v. Department of Human Serv.,793 A.2d 201, 213 (R.I. 2002). With regards to questions of law, the administrative agency's decision is not binding on the Court, whose review is de novo. Narragansett Wire Co. v. Norber,118 R.I. 596, 376 A.2d 1, 6 (1977). However, in statutes that the legislature has empowered an administrative agency to enforce, the agency's "interpretation of the statute as applied to a particularly factual situation" should be accorded "weight and deference as long as that construction is not clearly erroneous or unauthorized."Labor Ready Northeast, Inc. v. McConaghy,849 A.2d 340, 344 (R.I. 2004) (quoting In re Lallo,768 A.2d 921 (R.I. 2001)). *Page 8 
This deference is owed even when there are differing interpretations that reasonably could be applied to the statute. Id.
 III DEM Statutory Scheme and Administrative Regulations
It is the policy of the State of Rhode Island "to preserve the purity and integrity of the swamps, marshes, and other freshwater wetlands of this state. The health, welfare, and general well being of the populace and the protection of life and property require that the state restrict the uses of wetlands and, in the exercise of the police power, those wetlands are to be regulated hereunder." G.L. 1956 § 2-1-19. To further these ends, the General Assembly established the Department of Environmental Management and imbued it with the responsibility to "control the protection, development, planning, and utilization of the natural resources of the state, such resources, including but not limited to, water, plants, trees, soil, clay, sand, gravel, rocks and other minerals, air, mammals, birds, reptiles, amphibians, fish, shellfish, and other forms of aquatic, insect, and animal life" Sec. 42-17.1. Additionally, the DEM has been granted the power under the Freshwater Wetlands Act (the "Act") to "adopt, modify, or repeal rules and regulations that are in accord with the purposes of G.L. 1956 §§ 2-1-18-2-1-24 and are subject to the administrative procedures act, chapter 35 of title 42, except for those wetlands located in the vicinity of the coast as set out in chapter 23 of title 46 of the general laws which shall be regulated consistent with the provisions of chapter 23 of title 46." Sec. 2-1-20.1. Furthermore, the Director of the DEM has been granted the power pursuant to G.L. 1956 § 42-17.6-2 to "assess an administrative penalty on a person who fails to comply with any provision of any rule, regulation, order, permit, license, or approval issued or adopted by the director, or of any law which the director has the authority or responsibility to enforce. Any such penalty shall be an *Page 9 
alternative to any other civil penalty that may be prescribed by law." Given the DEM's limited legislative power, it must confine its conduct to its expressly defined channels through which the legislature has authorized it to act.
In order to act as an agent for the state, the DEM has been given authority to develop policies, programs and regulations that pertain to swamps, marshlands, and other freshwater wetlands. See
G.L. 1956 § 2-1-18. Pursuant to the powers granted to it by the General Assembly, the DEM has promulgated regulations under the DEM Rules and Regulations. Agency regulations which are promulgated pursuant to an express grant of statutory authority, like the DEM Rules and Regulations, have the "force of law." Henry v.Earhart, 553 A.2d. 124, 127 n. 1 (R.I. 1989) (quotingLerner v. Gill, 463 A.2d 1352, 1358 (R.I. 1983)).
A DEM permit is required for any proposed project or activity which may alter any freshwater wetland. See DEM Rules and Regulations § 7.01(A). Specifically, no person may "construct in; add to or take from or otherwise change the character of any freshwater wetland . . . in any way, without first obtaining a permit from the Department." DEM Rules and Regulations § 7.01(A). Any project either partially or wholly within freshwater wetland, or projects which will result in an alteration of the natural character of any freshwater wetland, also require a permit from the Department. DEM Rules and Regulations § 7.01(B). Freshwater wetlands are defined in part as "a bog, flood plain, pond, marsh, riverbank, swamp, river, area of land within fifty feet (50'), area(s) subject to flooding, area(s) subject to storm flowage, floodway, flowing body of water, stream, intermittent stream, perimeter wetland, submergent and emergent plant communities, special aquatic sites, shrub and forested wetland or any combination thereof." See DEM Rules and Regulations § 5.40(A). Thus, a permit is clearly required for the construction of a garage located next to a freshwater wetland like that present on the subject Property. *Page 10 
Pursuant to Section 10.02(A) of the DEM Rules and Regulations, the DEM "will evaluate all proposed projects which may alter the natural character of freshwater wetlands and their functions and/or values. . . ." The DEM has promulgated a specific set of procedures under the DEM Rules and Regulations, to be employed when an individual seeks to engage in a project which may result in an alteration of freshwater wetlands. See DEM Rules and Regulations § 10.01(A). An applicant looking to engage in a project located in or near a freshwater wetland is required to file an Application to Alter. See id. Applications to the DEM must demonstrate to the DEM in writing that all probable impacts to freshwater wetlands have been avoided to the maximum extent possible. DEM Rules and Regulations § 10.01(A). If impacts to freshwater wetlands cannot be avoided, then an applicant submitting an Application to Alter, must demonstrate to the DEM, in writing, that any probable impacts to wetland functions and values have been reduced to the maximum extent possible. DEM Rules and Regulations § 10.01(B). In addition to the analysis of the impact of the proposed project upon the values and/or functions of the freshwater wetlands, impact avoidance, and impact minimization, require that the applicant must demonstrate in writing all (26) criteria set forth in DEM Rules and Regulations Section 11.02 are met.
Once an applicant has filed an Application to Alter in compliance with the pertinent guidelines, a public notice is issued.See DEM Rules and Regulations § 9.05(B)(3). A public hearing is scheduled if one or more substantive objections are filed within a 45-day notice period. See DEM Rules and Regulations § 9.05(6)(a). Following the submission of the application and 45-day notice period, the DEM will then evaluate the application; the comments prepared by its staff; all other pertinent materials; and then issue a decision. See DEM Rules and Regulations § 9.05(B)(1). The staff's review may include a site visit and a series of *Page 11 
correspondence with the applicant. Based on this review, the DEM staff will prepare reports, and a DEM supervisor will issue a recommendation. If the application is later amended or modified, the staff will then prepare an addendum to their initial report, detailing whether the recommendation has been changed. The DEM staff is present for public hearings before the DEM, and are available to be questioned by both the DEM members and any interested parties. At the conclusion of any public hearings, the DEM votes to approve, modify, or deny the application as set forth in its enabling statute. In accordance with Section 2-1-21 of the Freshwater Wetlands Act, approval of a proposed alteration to any wetlands will be denied by the DEM if the project as proposed does not satisfy the review criteria contained in the Rules or would result in a random unnecessary or undesirable alteration of a freshwater wetland. See DEM Rules and Regulations § 9.05(E)(2).
Within ten (10) days of the receipt of a decision from the DEM regarding an Application to Alter a Freshwater Wetland, the applicant may request an adjudicatory hearing to appeal the decision or portions thereof. The request for an adjudicatory hearing must be in writing, must comply in form and content for such requests as required by the Administrative Rules of Practice and Procedure for the AAD, and must be filed directly with the AAD. DEM Rules and Regulations § 9.05E(4)(a). At the adjudicatory hearing, it shall be the applicant's burden to demonstrate by a preponderance of the evidence that the application, as proposed and sent out for public comment pursuant to Section 2-1-22 of the Act, is consistent with the purposes of the Act, complies with the DEM Rules and Regulations, and is protective of the environment and the health, welfare, and general well being of the populace. DEM Rules and Regulations § 9.05E(5). It is from this final Decision issued by the AAD that the aggrieved party in the instant matter is appealing. *Page 12 
 IV Review of the DEM Decision
Kent states various grounds upon which the DEM's AAD Decision should be reversed or remanded. Kent contends that the AAD's Decision and hearing officer's determinations were based on inadequate factual findings. Kent additionally contends that the Decision of the AAD and determinations made by the hearing officer were clearly erroneous in view of the reliable, probative, and substantial evidence on the record. Kent argues that the proposed project satisfies the Goals and Policies of the Freshwater Wetlands Act, and that the impact to wetlands at the project site has been reduced to the maximum extent possible pursuant to DEM Rules and Regulations §§ 10.01(A) and 10.01(B). Finally, Kent contends that reliable, probative and substantial evidence was improperly excluded from the AAD hearing to his detriment.
 A Competent Evidence
Kent argues that the AAD's and Hearing Officer's factual findings were conclusory in nature and were insufficient to support the AAD's Decision. The DEM, however, contends that each of the Hearing Officer and AAD's findings of fact was supported by competent evidence in the record.
Pursuant to G.L. 1956 § 42-35-12, the Administrative Procedures Act requires that "[f]indings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings." See Sakonnet v.Rogers, Inc., 536 A.2d 893, 896-97 (R.I. 1988); East GreenwichYacht Club v. Coastal Resources Management Council,118 R.I. 559, 569, 376 A.2d 682, 687 (1977). These findings of fact set forth in an administrative agency's decision must be supported by legally competent evidence in *Page 13 
the record. See Johnston Ambulatory Surgical Assocs.,Ltd. v. Nolan, 755 A.2d 799, 805 (R.I. 2000) (quotingBarrington Sch. Comm. v. R.I. State Labor Relations Bd.,608 A.2d 1126, 1138 (R.I. 1992)). Even though reasonable minds may have reached contrary results and even if the Court views the evidence differently than the AAD, so long as the AAD Hearing Officer's findings were based on the competent evidence before him or her, the Decision of the AAD should be affirmed. SeeBerberian v. Dept. of Employment Security,414 A.2d 480, 482 (R.I. 1980).
In the instant matter, the AAD Decision contained nineteen (19) findings of fact and twelve (12) Conclusions of Law. As set forth supra, if an applicant is seeking a permit pursuant to an "Application to Alter Wetlands," then he or she must satisfy the requirements present in §§ 10.01(A) and 10.01(B) of the DEM Rules and Regulations. The rules state in relevant part that:
 "A. Impact Avoidance: All applicants submitting an Application to Alter . . . must demonstrate to Department in writing that all probable impacts to freshwater wetlands have been avoided to the maximum extent possible. If impacts cannot be avoided, the applicant must satisfactorily demonstrate in writing that there are no alternatives to the proposed alterations which would not alter the natural character of any freshwater wetlands. The written evaluation must describe what steps were taken to avoid impacts to freshwater wetlands. . .
 B. Impact Minimization: If all impacts to freshwater wetlands cannot be avoided, an applicant submitting an Application to Alter . . . must demonstrate to the Department in writing that any probable impacts to wetland functions and values have been reduced to the maximum extent possible." Id.
Furthermore, before issuing a permit, the DEM must be satisfied that a proposed project complies with the review criteria contained in Section 11.02 of the DEM Rules and Regulations. The DEM policies for Freshwater Wetlands permit proposed projects, provided it can be demonstrated that the project will not result in "significant reduction in the suitability of any *Page 14 
wetland for use by any resident, migratory, seasonal, transient, faculatitive, or obligative wildlife species, in either the short-or long-term as a travel corridor; feeding site; resting site; nesting site; escape cover; seasonal breeding and/or spawning area." DEM Rules and Regulations § 11.02(6).
Kent presents several arguments: he has met all the §§ 10.01(A) and 10.01(B) criteria; the DEM's Decision does not conform to the applicable goals and policies of the Act; the DEM Hearing Officer's determinations were random and not based on any evidence in the record; and furthermore, the DEM improperly excluded substantial evidence at the hearing to the detriment of Kent.
Deference is due to an agency's interpretation of its own rules or regulations. Gonzales v. Oregon, 546 U.S. 243, 244 (2006);Citizens Savings Bank v. Bell,605 F. Supp. 1033, 1041 (D.R.I. 1985); State v. Cluley,808 A.2d 1098, 1103 (R.I. 2002). Similarly, the Court will defer to an agency's interpretation of an ambiguous statute "`whose administration and enforcement have been entrusted to the agency * * * even when the agency's interpretation is not the only permissible interpretation that could be applied.'" Auto Body Association ofRhode Island, 996 A.2d at 97 (quoting Pawtucket PowerAssociates Limited Partnership v. City of Pawtucket,622 A.2d 452, 456-57 (R.I. 1993)) (redactions in original). In the instant matter, the DEM has been granted the authority to interpret the regulations contained within the DEM Rules and Regulations, including Sections 10.01(A), 10.01(B), and 11.02. See
Sec. 2-1-20.1. Reading these regulations in their totality, it is quite clear that the proposed project by Kent did not conform to the applicable goals and policies of the Act. Relying on their own experience and expert testimony, the DEM Hearing Officer expressed concerns regarding whether Kent had taken steps to avoid impact to the maximum extent possible. See DEM Dec. at 18. *Page 15 
Where it appears from the record that a decision was reached in reliance upon expert testimony and knowledge concerning the matters which are related to an effective administration of the agency's statutes and regulations, it is considered adequate to constitute legal evidence sufficient to support such a finding. See CitizensSav. Bank v. Bell, 605 F. Supp. 1033, 1041 (D.R.I. 1985);Parkway Towers Associates v. Godfrey,688 A.2d 1289, 1294 (R.I. 1997). In the instant matter, one of the central issues confronting the DEM was whether Kent had taken all steps to avoid impact to the maximum extent possible in compliance with Sections 10.01(A), 10.01(B) and 11.02. It is clear that the DEM's findings of fact regarding this issue are based upon competent evidence in the record. See Environmental Scientific,621 A.2d at 209. The DEM made nineteen findings of fact regarding deficiencies in Kent's Application.
Kent's environmental consultant testified at the March hearings that Kent never addressed other areas of the Property as alternative locations for the subject project. See Hr' g Tr. Vol I., 95:7-18, March 23, 2009. Indeed, Kent's expert noted that other locations for the proposed garage, or a reduction in the garage's size, was not addressed or considered when submitting the application. See id. The DEM's expert noted that Kent's Application did not comply with the appropriate methodologies required by the DEM Rules and Regulations. See Hr' g Tr. Vol. II, 39: 16-21, March 24, 2009. Based on this testimony, the DEM did not find the evidence presented by Kent to be credible, and indeed disputed whether he had employed all possible steps to avoid impact on freshwater wetlands. See Costa v. Registrar of MotorVehicles, 543 A.2d 1307, 1309 (R.I. 1998) (holding a court must not substitute its judgment for that of an agency regarding the credibility of witnesses or weight of the evidence). In arriving at his decision, the Hearing Officer relied on evidence presented by DEM Staff Biologist Nancy Freeman in order to determine whether the proposed project could have addressed impact *Page 16 
avoidance pursuant to the DEM Rules and Regulations. Specifically, Ms. Freeman testified that "the project could have been designed to avoid impacts to the critical area of undisturbed wetland — previously undisturbed wetland that goes along the river — the stream corridor. I feel that if the applicant needed storage, he could have considered maybe expanding towards the back of the house or towards the southern side. See Hr' g Tr. Vol. I, 127:12-128:1, March 23, 2009.
Furthermore, as DEM's Permitting Supervisor Charles A. Horbert testified, Kent's Application did not adequately address impact minimization. "[Kent is] still obligated to pursue different alternatives or use different technologies to further minimize those impacts to ensure that those impacts — the final resulting impacts — are not detrimental to wetlands. (Hr' g Tr. Vol. II, 34:3, March 24, 2009.) Kent's Application and his environmental consultant's report are silent as to whether alternatives to the proposed project were pursued.
The Hearing Officer also made a determination, after hearing testimony from Kent's environmental consultant, that Kent's Application did not comply with Section 11.02(6) of the DEM Rules and Regulations. Kent's Application stated that "the proposed restoration activity will provide adequate screening between these wetland areas and the development on-site. Thus, all wildlife habitat values offered by this site and its immediate surroundings will be maintained upon completion of this project." (App. Ex. 4 at 13.) However, Staff Biologist Nancy Freeman noted that there was the potential for "lag time between when a species is affected following that kind of an impact. It's not always something that happens right away." (Hr' g Tr. Vol. I at 139:22-140:1, March 23, 2009.) As such, based on this testimony, the Hearing Officer made a determination that the impacts associated with the subject project were never sufficiently or accurately evaluated by Kent. As Permitting Supervisor Charles A. Horbert stated
 "I had an evaluation provided based on what appears to be flawed calculations as well as instances where on none of their site visits, *Page 17 
they even observed species of wildlife; whereas in our own site visits, we did observe wildlife. Just in general the evaluation provided by Nancy was more thorough and I had to give that greater weight in my evaluation." See Hr' g Tr. Vol. II at 22:19-23:8, March 24, 2009.
While Kent contends that the evidence presented was not adequate to support the AAD's Decision or the Hearing Officer's determination, there was testimonial evidence presented at the hearing and numerous reports submitted by both sides. Furthermore, in the instant case, after review of the initial Decision of the Hearing Officer and the record, it is clear that the Director of the DEM did not dispute any of the findings of fact or interpretations of law made by the Hearing Officer. The Director adopted the Decision of the Hearing Officer based on what he viewed to be the Hearing Officer's correct interpretation of the DEM Rules and Regulations. As such, the Director of the DEM issued a written decision on behalf of the AAD, and in so doing, did not tread upon the fact-finding function of the Hearing Officer or set aside his conclusions of law. See id. Although ample evidence was presented on both sides by competent individuals who had both engineering and biological experience in the field of freshwater wetlands, this Court may not substitute its judgment for that of the DEM as to the weight of the evidence on questions of fact. SeeCosta, 543 A.2d at 1309. The DEM Hearing Officer found its own experts and experience to be more credible than Kent's evidence on these issues, and this Court must give deference to that determination. See Environmental Scientific,621 A.2d at 209.
 B Evidentiary Issue
Finally, Kent contends that certain evidence was improperly excluded during the March hearings. Kent argues that aerial photographic evidence which was not submitted to the DEM *Page 18 
with the Application should have been permitted into evidence at the hearing. This evidence, Kent argues, is reliable, probative, and substantial.
Rule 401 of the Rhode Island Rules of Evidence explains that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Further, G.L. 1956 § 42-35-10 notes that in contested cases, "[i]rrelevant, immaterial, or unduly repetitious evidence shall be excluded during an administrative hearing." In the instant matter, none of the facts contained in Kent's testimony at the hearing were submitted to DEM as part of the initial Application. It would have been inappropriate for the Hearing Officer to consider this testimony. The Hearing Officer's review is confined to information the DEM was presented with when making its initial determination. Indeed, Hearing Officer Kerins noted that "What we try to do here is review whether the division appropriately denied the application based on what they had before them at the time." (Hr' g Tr. Vol. I, 48:21-23, March 23, 2009.) To allow this evidence to be presented after the initial application was already reviewed would run contrary to the Hearing Officer's responsibility to review the agency record during the hearing process.
Furthermore, neither the application nor Kent's expert's report contains the photographic evidence. The subsequent administrative hearing was merely a review of this application process. As such, Kent clearly was prohibited from using photographic evidence which was never submitted to the DEM prior to the Application denial.See G.L. 1956 § 42-35-9(g) ("Findings of fact shall be based exclusively on the evidence and matters officially noticed"). As such, this evidence is clearly not relevant to the DEM's Decision, and was properly excluded *Page 19 
from evidence by the Hearing Officer in accordance with state law and the Rhode Island Rules of Evidence. See id.
 IV Conclusion
After a review of the entire record, this Court finds that the DEM's Decision to deny Kent's Application to Alter Wetlands is not affected by error of law and does not exceed the DEM's statutory authority. The DEM's Decision is not clearly erroneous in view of the reliable, probative, and substantial evidence of record. Additionally, this Court finds that the DEM's Decision is not arbitrary or capricious or characterized by abuse of discretion, or an unwarranted exercise of the DEM's discretion. Substantial rights of the Appellant, Edward A. Kent, have not been prejudiced. For the foregoing reasons, the Decision of the DEM dated December 2, 2009 is affirmed. Counsel shall confer and submit forthwith for entry an agreed upon form of Order and Judgment that is consistent with this Decision.

 *Page 1